## John B. Sutton, Appellant, v. Findlay Cemetery Association, Appellee.

1. WATERS AND WATER COURSES, § 23*—*when pollution by cemetery enjoined.* On a suit to enjoin defendant from selling or attempting to sell lots in its premises for burial purposes or to enter bodies therein or to permit them to be interred, where plaintiff introduces a number of expert witnesses who substantiate the allegations of his bill that a water course used by him to water his stock will be contaminated by bacteria and poisonous exudations from the decomposition of human bodies in the cemetery, and defendant introduces three local physicians, who do not qualify as experts, but testify that in their opinion no deleterious effects will be produced, an injunction will be granted.

2. WATERS AND WATER COURSES, § 23*—*when fact of previous pollution by another not ground for denial of injunction.* In a suit to enjoin a cemetery company from polluting a water course, the fact

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

that the waters have already been polluted by the deposit of sewage from a village is not ground for denial of the injunction.

Scholfield, J., dissents.

Appeal from the Circuit Court of Shelby county; the Hon. Albert M. Rose, Judge, presiding. Heard in this court at the April term, 1914. Reversed and remanded with directions. Opinion filed October 16, 1914. Rehearing denied December 2, 1914. *Certiorari* allowed by Supreme Court.

Dove & Dove, for appellant.

E. A. Richardson and Whitaker, Ward & Pugh, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

This is a suit in chancery, the purpose of which is to procure an injunction restraining appellee from selling or attempting to sell any lot or lots in its premises for burial purposes and from interring or permitting to be interred any bodies therein. The bill as amended, in substance, avers that appellee is a corporation and is the owner of ten acres of land adjoining appellant's land on the west; that said tract of land has been surveyed and platted preliminary to laying out a cemetery therein; that it is close to the corporate limits of the village of Findlay, having a population of about one thousand people; that the village of Findlay has no cemetery or burial ground, but that the nearest one is a country graveyard three miles distant, that the purpose of appellee is to sell lots to the public and to use said land as a public cemetery; that in said premises and near the west line of the land owned by appellee is the head of a natural water course which is known as the west fork of the "Everman Branch"; that said natural water course continues in an easterly direction through the premises of appellee and through the land of appellant and gradually widens as it continues eastward and eventually empties into

the Okaw River; that the natural drainage of all the lands of appellant and appellee is towards this branch, and that said cemetery is low and flat with but a slight fall towards the branch; that during eight or nine months of each year there is considerable water in said branch and it is a running stream during that portion of the year; that for at least that length of time said branch contains water sufficient in quantity and of sufficient purity to furnish drink for cattle, horses, hogs and other domestic stock kept by appellant; that appellant has resided on his land for more than ten years and makes his home thereon; that during all that time that portion of his land adjoining said water course on both sides has been used for pasturing purposes and for watering his stock; that appellee is constructing a tile ditch by means of which it is proposed to drain and underdrain its cemetery; that the outlet for said tile drain is to be in said natural water course; that by reason of said cemetery being used for burial purposes the discharge from said tile drain would carry contamination and the waters therefrom would be unhealthy and unfit for drinking purposes for cattle, horses, hogs and all kinds of stock, and that the lands of appellant through which said water course runs and into which the drainage of said cemetery would empty would, by reason of said discharge from said drain, be rendered unfit for dairy purposes and stock raising, and said discharge from said drain would cause noxious odors to spread over the farm of appellant and about his place of residence, thereby rendering the same unhealthy and uncomfortable as a place to live, and irreparable damage would be caused and a nuisance would thereby be created; that during several months of each year said land is so water-logged that in order to render said premises suitable for burial purposes it is necessary to properly drain and underdrain the same; that in the event said premises are so drained the discharge from said drain after inter-

ment of human bodies therein would contain bacteria and poisonous exudations from decomposing human bodies, which discharge would be emptied into said natural water course and so carried upon the lands and premises of appellant; that injurious products of decomposition would emanate from said bodies; that water percolating through the soil would take up these emanations and such waters would thereby be rendered poisonous and contaminated, and would percolate into and upon the land of appellant and also into said natural water course and would be carried into and upon the lands of appellant, by reason whereof the lands and stock of appellant would be greatly depreciated in value and the milk and cream of cows pasturing upon the land of appellant and butter therefrom would be decreased in value, if not rendered wholly unsalable.

The answer admits the ownership of the cemetery and the purpose thereof as alleged in the bill and that the natural drainage of the lands of both appellant and appellee is towards said water course and that a tile drain has been constructed by means of which it is proposed to drain and underdrain said cemetery, and that the outlet of said drain is in said natural water course; it denies that the cemetery is low and flat and that said water course is a running stream eight or nine months in the year and that it contains water sufficient in quantity for cattle, horses and hogs during that time, and that appellant has been accustomed to use said water course for watering his stock; that by reason of said cemetery being used for burial purposes the discharge of said tile drain would carry contamination and would be unhealthy and unfit for drinking purposes for all kinds of stock, and that the land of appellant will be rendered unfit for dairy purposes and that they will be rendered unhealthy and uncomfortable as a place in which to live. The answer avers that said cemetery consists of a clay subsoil;

that all the tiles and drains which appellee put in said premises are for the purpose of carrying off surface water from the premises and that the tiles and drains constituting the underdrainage are made in the center of the driveways; that no grave will be closer than eighteen feet to the tile and that the tile will be but a little lower than the bottom of the graves; that it will be impossible for any portion of the decomposed bodies to reach said tile or to go on to the premises of appellant; that no noxious gases can enter into said tile, etc. The answer further avers that all the drainage from the village of Findlay is carried into said water course and that appellant never made any complaint to appellee until after appellee had spent several thousand dollars in purchasing and improving these grounds.

Appellant introduced the testimony of a number of expert bacteriologists whose testimony substantially sustained the averments of the bill as to the contention of the water in the water course being contanimated by bacteria and poisonous exudations from the decomposition of human bodies in the cemetery. Appellee introduced the testimony of three local physicians, who did not qualify as experts, but who testified that in their opinion no such deleterious effects would be produced. The pleadings and facts in this case are substantially analogous to those in the case of *Barrett v. Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385. In that case it was held that an injunction should issue, and we feel bound by the rule therein announced. One expert witness who testified in the case at bar also testified in that case. The claim that the waters in this stream have already been polluted by drainage from the village of Findlay, and therefore an injunction would be unavailing, cannot be sustained. The same contention was made in the *Barrett* case, *supra,* and the Supreme Court held: "But we know of no rule of law that sanctions one wrong because another has preceded it." We are constrained to hold upon the authority of the *Barrett* case, that the chancellor erred in dismissing the bill

for want of equity, and the decree must be reversed and cause remanded with directions to enter a decree granting the injunction prayed for.

*Reversed and remanded with directions.*

MR. JUSTICE SCHOLFIELD dissents.